UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JAMES E. FLAHERTY,

                               Plaintiff,         **MEMORANDUM & ORDER**
                                                                02-CV-4801 (DRH) (WDW)
      -against-


ALL HAMPTON LIMOUSINE, INC., et. al.,

                               Defendants.
------------------------------------------------------------X

**APPEARANCES:**

**James E. Flaherty, Pro Se**
Post Office Box 148
Hampton Bays, New York 11946

**For Defendant Rocky Point Taxi Inc.:**
**Fulbright & Jaworksi L.L.P.**
666 Fifth Avenue, 31st Floor
New York, New York 10103-3198
By: Neil G. Sparber, Esq.
    Mark Bradford, Esq.

**For Defendants David Morse & Associates, Inc. and Christopher Scheno:**
**Brand Glick & Brand**
600 Old Country Road
Garden City, New York 11530
By: Robert S. Mazzuchin, Esq.

**For Defendants Gates MacDonald and Barbara Swan:**
**White Fleischner & Fino, LLP**
140 Broadway – 36th Floor
New York, New York 10005
By: Joseph M. Glatstein, Esq.

**For Defendant Peter Colucci:**
**Reynolds, Caronia, Gianelli, Hagney & La Pinta LLP**
35 Arkay Drive
Post Office Box 11177
Hauppauge, New York 11788

By: James T. Reynolds, Esq.

**HURLEY, Senior District Judge:**

Plaintiff James E. Flaherty ("Plaintiff") filed the present action alleging, inter alia, that defendants committed unlawful racketeering activity, as defined in the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962, arising out of their alleged conspiracy to deprive Plaintiff of workers' compensation benefits.  Defendants Rocky Point Taxi Inc. ("Rocky Point"), Peter Colucci ("Colucci"), David Morse & Associates, Inc. ("DMA"), Christopher Scheno ("Scheno"), Gates MacDonald of New York ("Gates MacDonald"), and Barbara Swan ("Swan") (collectively, "Defendants") have moved to dismiss the Verified Amended Supplemental Complaint (the "Supplemental Complaint") pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) and Rule 12(c).  For the reasons stated below, Defendants' motions are granted in part and denied in part.

### *FACTUAL BACKGROUND*

The following facts are taken from the Supplemental Complaint and are presumed true for purposes of this motion.

Plaintiff was a taxi and limousine driver for Rocky Point from July 1999 to October 1999, and January 2000 through July 4, 2000.  Colucci was Rocky Point's principal.  After he left the employ of Rocky Point, Plaintiff began driving a taxi for defendant All Hampton Limousine, Inc. ("All Hampton").  On or about July 17, 2000, defendants Mary Neary and Crystal Joyce, dispatchers for All Hampton, began calling Plaintiff sexually demeaning

names over the taxi radio and in person, which created a hostile work environment for Plaintiff.[1]

Plaintiff's claims against the moving defendants arise from his involvement in an automobile accident on or about July 26, 2000, while Plaintiff was allegedly employed as a taxi driver for All Hampton and driving a vehicle registered thereto. According to the Supplemental Complaint, Plaintiff was seriously injured as a result of the accident and fell into a coma for a period of approximately two weeks. On October 7, 2000, Plaintiff submitted a claim with the New York State Workers' Compensation Board.

Defendant Reliance National Risk Specialists d.b.a. Reliance National Insurance Co. ("Reliance") was the workers' compensation carrier for All Hampton. Gates MacDonald was the third party administrator retained by Reliance to oversee claims made against Reliance. Swan was the Gates MacDonald claims examiner who oversaw Plaintiff's claim.

Gates MacDonald contested Plaintiff's right to workers' compensation benefits, asserting that Plaintiff was not an "employee" of All Hampton at the time of the accident. Gates MacDonald retained DMA to investigate Plaintiff's claim. Scheno was the DMA investigator who obtained statements from several people familiar with Plaintiff. These statements were memorialized in two reports to Gates MacDonald and were sent by facsimile and/or U.S. mail to Gates MacDonald. Thereafter, Swan faxed a C-7 Form to the Workers' Compensation Board, denying an employer-employee relationship between Plaintiff and All Hampton. Plaintiff claims that the transmission of these documents constitute mail and wire fraud.

---

[1] As discussed *infra*, the proceedings have been stayed against defendants All Hampton and its employees.

Following the accident, Plaintiff attempted to obtain his tax records for the calendar years 1999 and 2000 for use during the workers' compensation proceeding. His investigation allegedly revealed that 1099s and W-2s were either not filed by Rocky Point or were fraudulently filed. Plaintiff claims that the alleged failure to accurately report his income and the mailing of the inaccurate forms to the IRS constitutes mail fraud.

On or about March 2, 2001, Plaintiff attended the workers' compensation hearing. By decision filed March 12, 2001, the Board closed Plaintiff's case without prejudice to "reopen when [Plaintiff's] mental condition improves to the point he can reasonbly [sic] prosecute case." (Supplemental Compl. Ex. MM.) The decision further indicates that Plaintiff was "to retain counsel." (*Id.*)

On June 28, 2003, Plaintiff filed an application to reopen the proceedings, which apparently was granted because Plaintiff alleges that a hearing was held on May 28, 2004. There are no allegations that the Workers' Compensation Board ever made a final disposition awarding or denying benefits to Plaintiff.

The Supplemental Complaint, which consists of approximately 100 pages of allegations and over 100 pages of exhibits, asserts six causes of action, four under RICO against all defendants, one for sexual harassment and retaliation under 42 U.S.C. § 2000e-3(a) against the All Hampton defendants, and one for defamation against defendants Reliance, Gates MacDonald, Swan, DMA, and Scheno.

***PROCEDURAL BACKGROUND***

Plaintiff commenced this action in the Southern District of New York on or about November 9, 2001. By Order dated August 27, 2002, the matter was transferred to this Court.

Plaintiff filed a "Verified Amended Complaint" on August 30, 2002.

By Orders dated January 3, 2003 and November 4, 2003, the Court stayed the action as to defendants Reliance and All Hampton, as well as All Hampton employees Matthew Galiadatto, John Tomitz, Mary Neary, and Crystal Joyce.

By Memorandum of Decision and Order dated August 4, 2004, the Court granted Defendants' motion to dismiss Plaintiff's RICO claims, finding that Plaintiff's pleading failed to satisfy the "enterprise" element and that Plaintiff failed to allege he was injured by reason of the alleged RICO violation. Plaintiff was given permission to file an amended complaint within thirty days, with the warning that "[f]ailure to address the pleading concerns enunciated in this order may result in dismissal with prejudice." (Aug. 4, 2004 Memorandum of Decision and Order at 9.)

Plaintiff filed the Supplement Complaint on September 3, 2004. Two months later, Plaintiff filed an interlocutory appeal to the Second Circuit with regard to this Court's Order staying the action as to several defendants. On May 1, 2007, this appeal was dismissed.

On May 30, 2007, Defendants filed the instant motions to dismiss. By Order dated May 31, 2007, Plaintiff was directed to serve and file opposition papers by June 29, 2007. On June 19, 2007, Plaintiff requested an extension of time to submit opposition papers. By Order dated June 25, 2007, the Court granted Plaintiff an extension to July 13, 2007.

In a letter dated July 18, 2007, and filed July 23, 2007, Plaintiff requested a second extension of time. This new request was for a one-month extension of time, until August 15, 2007, and was based on a supposed medical recommendation. By Order dated July 25, 2008, the Court granted Plaintiff's request for an extension, but only until August 3, 2007. The Court

noted that: (1) Plaintiff's request was untimely; (2) Plaintiff's request did not contain the referenced medical recommendation and, therefore, there was no basis for a "medically recommended" extension; and (3) by his own admission, the alleged pain and suffering Plaintiff had suffered was for a "few days" only and had occurred at the end of May 2007, two months prior to Plaintiff's request. (July 25, 2007 Order.) The Court warned that should Plaintiff fail to timely submit his response papers by August 3, 2007, "the Court may consider Defendants' Motions unopposed and proceed accordingly." (*Id.*)

On August 3, 2007, Plaintiff moved for reconsideration of the July 25, 2007 Order, requesting an additional three weeks to serve and file responsive papers. By Order dated August 14, 2007, the Court granted Plaintiff's request for reconsideration, and upon reconsideration, denied Plaintiff's request.[2]

Plaintiff appealed the August 14th Order, which appeal was denied on April 18, 2008.[3] Accordingly, before the Court are Defendants' unopposed motions to dismiss. For the reasons that follow, Defendants' motions are granted in part and denied in part.

### *DISCUSSION*

**I.** *Motion to Dismiss: Legal Standards*

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court recently clarified the pleading standard applicable in evaluating a motion to dismiss under Rule

---

[2] Plaintiff's motion to vacate the August 14th Order (docket no. 90) pursuant to Rule 60 is denied. To the extent Plaintiff's motion is at all decipherable, it is without merit.

[3] Plaintiff's motion for reconsideration of the Court's Order denying his request to proceed in forma pauperis on appeal (docket no. 101) is denied as moot.

12(b)(6).[4]  In *Bell Atl. Corp. v. Twombly*, – U.S. –, 127 S. Ct. 1955 (2007), the Court disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 45-46. Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." 127 S. Ct. at 1974.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 1964-65 (citations and internal quotation marks omitted).

The Second Circuit has stated that *Twombly* does not require a universally heightened standard of fact pleading, but "instead requir[es] a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007).  In other words, *Twombly* "'require[s] enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, – F.3d –, No. 06-3128-CV, 2007 WL 2471805, at *2 (2d Cir. Sept. 4, 2007) (quoting *Twombly*, 127 S. Ct.

---

[4]  Some of the defendants move under Rule 12(b)(6) and others under Rule 12(c).  The standard under both Rules is the same. *See Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir. 1998).

at 1974).[5]  As always, the Court must "accept[] all factual allegations in the complaint and draw[] all reasonable inferences in the plaintiff's favor."  *ATSI Commcn's, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

Additionally, this court must construe pro se complaints like Plaintiff's liberally, applying a more flexible standard to evaluate their sufficiency than the standard used to review complaints submitted by attorneys.  *Lerman v. Bd. of Elections in City of New York*, 232 F.3d 135, 140 (2d Cir. 2000).  Thus, "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, – U.S. –, 127 S. Ct. 2197, 2200 (2007); *see also Phillips v. Girdich*, 408 F.3d 124, 127-28 (2d Cir. 2005) ("[A]s low as the requirements are for a complaint drafted by competent counsel, we hold *pro se* complaints to an even lower standard.").

## II.     *Defendants' Motions to Dismiss the RICO Claims are Granted*

### A.      *Applicable Law Under RICO*

"RICO is a broadly worded statute that 'has as its purpose the elimination of the infiltration of organized crime and racketeering into legitimate organizations operating in interstate commerce.'"  *Attorney Gen. of Canada v. R.J. Reynolds Tobacco Holdings, Inc.*, 268 F.3d 103, 107 (2d Cir. 2001) (quoting S. Rep. No. 91-617, at 76 (1969)).  "Because the mere assertion of a RICO claim has an almost inevitable stigmatizing effect on those named as defendants, courts should strive to flush out frivolous RICO allegations at an early stage of the

---

[5] Although *Twombly* did not make clear whether the plausibility standard applies beyond the antitrust context, the Second Circuit has "declined to read *Twombly's* flexible 'plausibility standard' as relating only to antitrust cases." *ATSI Commn's, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 n.2 (2d Cir. 2007).

litigation." *Bell v. Hubbert*, No. 95 Civ. 10456, 2007 WL 60513, at *5 (S.D.N.Y. Jan. 8, 2007) (citations and internal quotation marks omitted).

"To establish a RICO claim, a plaintiff must show: (1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001) (citations and internal quotation marks omitted). Thus, to state a claim under the civil RICO statute, "a plaintiff has two pleading burdens." *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983). First, the complaint must allege that the defendant has violated "the substantive RICO statute . . . commonly known as 'criminal RICO.'" *Id.* In order to meet this initial burden, a plaintiff must plead "the existence of seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *See id.* Allegations in support of predicate acts sounding in fraud, such as mail or wire fraud, must satisfy the rigors of Rule 9(b). *See Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1176 (2d Cir. 1993); *Zhu v. First Atl. Bank*, No. 05 Civ. 96, 2005 WL 2757536, at *3 (S.D.N.Y. Oct. 25, 2005). Second, a plaintiff must allege that the injury to business or property occured by reason of a violation of the criminal RICO statute. *See Moss,* 719 F.2d at 17.

  **B.**   *Plaintiff Fails to State a RICO Claim Against any of the Defendants*

After a review of the Supplemental Complaint, the Court finds that Plaintiff has failed to state a RICO violation against any of the Defendants. As an initial matter, Plaintiff has failed to allege a pattern of racketeering activity. "Racketeering activity" is defined as certain

criminal acts under state and federal law including mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343. *See* 18 U.S.C. § 1961(1)(B). A "pattern of racketeering activity" requires "at least two predicate acts of racketeering activity" committed within a ten-year period. 18 U.S.C. § 1961(5). "To establish a pattern, a plaintiff must also make a showing that the predicate acts of racketeering activity by a defendant are 'related, and that they amount to or pose a threat of continued criminal activity.'" *DeFalco*, 244 F.3d at 321 (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). "The latter so-called 'continuity' requirement can be satisfied either by showing a 'closed-ended' pattern-a series of related predicate acts extending over a substantial period of time-or by demonstrating an 'open-ended' pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008). "[C]losed-ended continuity is primarily a temporal concept" and "[t]he relevant period . . . is the time during which RICO predicate activity occurred, not the time during which the underlying scheme operated or the underlying dispute took place." *Id.* Although the Second Circuit has "not viewed two years as a bright-line requirement," it has "never held a period of less than two years to constitute a substantial period of time." *Id.* (citation and internal quotation marks omitted). This is particularly true where "the activities involve[] only a handful of participants and do not involve a complex, multi-faceted conspiracy." (citations and internal quotations marks omitted).

Here, the predicate acts alleged against Defendants consist of alleged mail and wire fraud as part of pattern to defraud Plaintiff out of his right to workers' compensation benefits. Plaintiff alleges that Rocky Point mailed false tax forms between April 2000 and April

2001. He also alleges that defendants Gates MacDonald, Swan, DMA, and Scheno mailed and/or faxed forms and reports denying Plaintiff's employee status from January through March 2001. Even assuming the truth of Plaintiff's allegations, Plaintiff has failed to state facts sufficient to satisfy the continuity element. This twelve-month period of time is insufficient to establish closed-ended continuity, particularly in the absence of separate schemes or large numbers of participants and victims. Moreover, Plaintiff has failed to allege open-ended continuity as there are no facts suggesting any threat of continuity. Thus, even under the most liberal reading of the Supplemental Complaint, Plaintiff's allegations fall short of the mark.

Next, even assuming that Plaintiff had adequately alleged a violation of the RICO statute, the Court would nevertheless dismiss the RICO claims because Plaintiff has failed to allege any cognizable injury stemming from a violation of any of the four subsections of section 1962. *See* 18 U.S.C. § 1962(a)-(d). A plaintiff has standing to bring a RICO claim only if he has been "injured in his business or property" by the conduct constituting the RICO violation and only when "his actual loss becomes clear and definite." *See Denney v. Deutshe Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006) (citation and internal quotation marks omitted). In addition, the RICO statute provides that any person injured "by reason of a violation of section 1962" may maintain a civil RICO suit. 18 U.S.C. § 1964(c). The phrase "by reason of" requires a plaintiff to allege that his injury was "both factually and proximately caused by the alleged RICO violation." *See DeFalco*, 244 F.3d at 329.

Plaintiff's "Verified Amended Complaint" alleged that his Workers' Compensation case was closed without prejudice and that Plaintiff could reopen it when his mental condition improved. In its August 4, 2004 Order, the Court found these allegations

insufficient to allege injury and causation. The Supplemental Complaint includes these allegations but adds that Plaintiff filed an application to reopen the proceedings and that a hearing was held on May 28, 2004. There are no allegations that the Workers' Compensation Board ever made a final disposition awarding or denying benefits to Plaintiffs.[6] Because Plaintiff fails to allege a final decision of the Workers' Compensation Board, he cannot claim denial of benefits as an injury. Moreover, to the extent he alleges that he was injured by Defendants' "intentional delay" which allegedly "unconscionably delayed Plaintiff's medical treatment and loss of time benefits" (Supplemental Compl. ¶ 88((c)), his claim still fails because there is no suggestion of a causal connection between any of Defendants' alleged actions and any "delay" Plaintiff suffered in proceeding with his hearing. The first decision by the Board closing Plaintiff's case explicitly stated that the reason for its actions was that Plaintiff's mental condition was not at a point where he could "reason[a]bly prosecute the case." (Supplemental Compl. Ex. MM.) Plaintiff has failed to suggest, let alone plausibly suggest, that any delay in his workers' compensation hearing was factually and proximately caused by the alleged mail and/or wire fraud.

Finally, in addition to alleging substantive RICO claims under sections 1962(a), (b), and (c), Plaintiff alleges a RICO conspiracy claim under section 1962(d). This claim too must be dismissed. Section 1962(d) provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." Thus, to

---

[6] Several of the Defendants deny knowledge of any May 2004 hearing or disposition related thereto. However, defendant Colucci claims that he has learned via counsel that Plaintiff has been granted Workers' Compensation benefits through All Hampton's coverage subject to his attending a physical exam, which he has failed to do. (Colucci Aff., dated May 29, 2007, ¶ 2.)

establish the existence of a RICO conspiracy, a plaintiff must prove "the existence of an agreement to violate RICO's substantive provisions." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 244 (2d Cir. 1999) (citation and internal quotation marks omitted); *accord First Capital Asset Mgmt. Inc. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004). Because Plaintiff "did not adequately allege a substantive violation of RICO," his conspiracy claim is "properly dismissed." *First Capital*, 385 F.3d at 182 (citations omitted); *accord Nat'l Group for Commc'n and Computers Ltd. v. Lucent Techs. Inc.,* 420 F. Supp. 2d 253, 272 (S.D.N.Y. 2006) ("Case law in this Circuit confirms that a 1962(d) conspiracy claim must be dismissed where the substantive RICO claim is deficient.").

### III.   *The Defamation Claim is Not Dismissed*

Plaintiff's sixth cause of action asserts a claim of defamation against defendants Reliance, Gates MacDonald, Swan, DMA, and Scheno. Only defendants Gates MacDonald and Swan move to dismiss this claim.

Plaintiff alleges that DMA and Scheno authored false reports as part of their investigation for Gates MacDonald. He further alleges that Gates MacDonald and Swan then faxed these reports to the "public" (Compl. ¶ 292), presumably the Workers' Compensation Board. The reports indicate, inter alia, that while working as a driver for All Hampton, Plaintiff was handing out personalized business cards with his cell phone number. (*Id.* Ex. DD at 2.) This led defendant Crystal Joyce, a dispatcher at All Hampton, to believe that Plaintiff was "'stealing' by utilizing the All Hampton limo vehicles to do under-the-table livery work." (*Id.*) He was ultimately transferred to the West Hampton satellite office. (*Id.*)

Gates MacDonald and Swan contend that the statements in the reports "were

nothing more than the product of investigation, and there is no evidence that they were false." (Gates MacDonald's and Swan's Mem. at 17.) However, "[a]t the Rule 12(b)(6) stage, the issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims." *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000) (citation and internal quotation marks omitted). Their argument, therefore, has no merit at this time.

Gates MacDonald and Swan also argue that the statements cannot be the basis of a defamation claim because they are protected by a qualified privilege. New York recognizes a qualified "common interest privilege" to help facilitate the flow of information between parties regarding subjects in which they share a common interest. *See Liberman v. Gelstein*, 80 N.Y.2d. 429, 437 (1992); *see also Demas v. Levitsky*, 738 N.Y.S.2d 402, 410 (3d Dep't 2002) ("[A] qualified privilege arises when a person makes a good-faith, bona fide communication upon a subject in which he or she has an interest, or a legal, moral or societal interest to speak, and the communication is made to a person with a corresponding interest.") (citation and internal quotation marks omitted). Defendants argue that investigative reports fall squarely within this privilege because they were sent to the Workers' Compensation Board exclusively in the context of determining Plaintiff's right to benefits.

A plaintiff may defeat a claim of qualified privilege by demonstrating that a defendant spoke with malice, either of the common law or the constitutional variety. *See Foster v. Churchill*, 87 N.Y.2d 744, 751 (1996); *see also Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 99 (2d Cir. 2000). Common law malice means spite or ill will; constitutional malice means that the statement was made with a high degree of awareness of probable falsity. *Konikoff*, 234 F.3d at 99 (citing, inter alia, *Liberman*, 80 N.Y.2d at 438-39).

Here, the Supplemental Complaint alleges that the statements were made and disseminated maliciously. The nature and extent of defendants' mens rea is a question of fact not appropriate for disposition under Rule 12(b)(6). *See Penn Group, LLC v. Slater*, No. 07 Civ. 729, 2007 WL 2020099, at \*6 (S.D.N.Y. June 13, 2007) ("Whether [a common interest] privilege would apply here depends on who the recipients were, whether those recipients actually shared a common interest with [defendant] and with each other, whether [defendant] acted with malice, and whether [defendant] made any statements she knew or should have known were false. All of these factual questions depend upon the assessment of an evidentiary record, which is not available on a Rule 12(b)(6) motion.") (internal citation omitted); *Demas*, 738 N.Y.S.2d at 410 ("Because the 'common interest' privilege constitutes an affirmative defense [], it does not lend itself to a preanswer motion to dismiss . . . .") (internal citations omitted). In fact, *Peters v. Baldwin Union Free Sch. Dist.*, 320 F.3d 164 (2d Cir. 2003), the case relied upon by Gates MacDonald and Swan, is inapposite as it was decided in the context of a Rule 50 motion made after trial. *Id.* at 170 (finding that plaintiff "presented no evidence" that defendant was motivated by malice). Accordingly, the Court declines to find that Gates MacDonald and Swan are protected by a qualified privilege at this juncture. Thus, on the arguments presented, the motion by Gates MacDonald and Swan to dismiss the defamation claim is denied.

**IV.** *The Court Declines to Grant Plaintiff Leave to Amend his RICO Claims*

"Where dismissal is based on a pro se plaintiff's failure to comply with pleading conventions, a district court 'should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Shelton v. Trs. of Columbia Univ.*, 236 Fed. Appx. 648, 649, No. 06-CV-0664, 2007 WL

1492845, at *1 (2d Cir. May 23, 2007) (summary order) (quoting *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir. 1991)). In this case, the Court has already given Plaintiff a chance to amend his "Verified Amended Complaint" to state a claim and Plaintiff has been unable to do so. In fact, the Supplemental Complaint is essentially unchanged from its predecessor with the exception of some new allegations regarding the alleged enterprise.

Although leave to amend a pleading should be "freely give[n] . . . when justice so requires," Fed. R. Civ. P. 15(a), a district court need not grant leave if amendment would be futile, i.e., when the amended pleading would not itself withstand a motion to dismiss. *See Milanese v. Rust-Oleum Corp.,* 244 F.3d 104, 110 (2d Cir. 2001). Despite the special leniency afforded Plaintiff's pleading due to his pro se status, the Court finds that any amendment would be futile. Plaintiff failed to address the Court's pleading concerns in his Supplemental Complaint, which like the previous complaint, is prolix and mainly unintelligible. To the extent the Court can glean any coherent factual allegations, the pleading gives no indication that a valid RICO claim may be stated. Accordingly, the Court declines to grant Plaintiff permission to amend with regard to his RICO claims.

## *CONCLUSION*

For the foregoing reasons, the motions by defendants Colucci (docket no. 76), Gates MacDonald and Swan (docket no. 77), DMA and Scheno (docket no. 78), and Rocky Point (docket no. 80) to dismiss the RICO claims are GRANTED. Accordingly, the Supplemental Complaint is hereby dismissed as to defendants Rocky Point and Colucci.

To the extent the motion by defendants Gates MacDonald and Swan (docket no. 77) sought dismissal of Plaintiff's defamation claim, it is denied. Therefore, this claim remains

pending against defendants Gates MacDonald, Swan, DMA, and Scheno.

By Orders dated January 3, 2003 and November 4, 2003, the Court stayed the action as to the remaining defendants, viz. Reliance, All Hampton, Matthew Galiadatto, John Tomitz, Mary Neary, and Crystal Joyce. These defendants are hereby directed to provide a status report to the Court, via letter to be electronically filed, on or before August 1, 2008.

**SO ORDERED.**

Dated: Central Islip, N.Y.
July 16, 2008

_____
Denis R. Hurley,
United States District Judge